Salvatore **PISTORIO**, Appellant,

v.

Charles **EINBINDER**, Deputy Commissioner, U. S. Department of Labor, Bureau of Employees' Compensation, et al., Appellees.

No. 19152.

United States Court of Appeals District of Columbia Circuit.

Argued June 4, 1965.

Decided Sept. 9, 1965.

Mr. Joseph H. Koonz, Jr., Washington, D. C., with whom Messrs. Martin E. Gerel and Lee C. Ashcraft, Washington, D. C., were on the brief, for appellant.

Mr. George M. Lilly, Atty., Dept. of Labor, of the bar of the Supreme Court of North Carolina, pro hac vice by special leave of Court, with whom Messrs. David C. Acheson, U. S. Atty., Charles Donahue, Sol., Dept. of Labor, Charles T. Duncan, Principal Asst. U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., and Alfred H. Myers, Atty., Dept. of Labor, were on the brief, for appellee Einbinder.

Mr. Charles Halleck, Washington, D. C., entered an appearance for appellee Liberty Mut. Ins. Co.

Before FAHY, DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

The Deputy Commissioner on August 20, 1962, entered [1] a compensation order which included an award to this appellant based upon a permanent partial disability rating of 50 per cent. That award was modified by order filed March 27, 1964, when the Deputy Commissioner determined not only that the disability rating should be reduced to 15 per cent but that the modified award be made retroactive to June 1, 1962. In review proceedings the District Court entered summary judgment for the Deputy Commissioner and for the intervenors, the appellant's former employer, Antonio Troiano Tile & Marble Co., Inc. and that latter's insurance carrier, Liberty Mutual Insurance Company. Appellant charges error in the District Court's refusal to set aside the Deputy Commissioner's modification order as "not in accordance with the law and * * * not supported by the evidence."

Section 922 of the Act authorizes a "new compensation order" "on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner." The Deputy Commissioner here had not purported to rest upon "mistake" grounds. There was no indication, by findings or otherwise, of the respect in which the August 20, 1962 order could have been the result of a "mistake in a determination." [2] Rather, the Deputy Commissioner's 1964 award was based upon the finding:

"3. That the claimant's condition has improved; that since June 1, 1962, the claimant has worked as a gardener where he kneels [3] down to pull up weeds, he sweeps walks and and tends the walks where flowers grow and often trims the rose bushes."

Thereupon, although finding further that the claimant's "partial disability is permanent," the Deputy Commissioner determined in respect of the claimant's wage-earning capacity, that "he is entitled" only to $8.10 per week compensation "based on a 15 per cent permanent partial disability." Since the initial order had been based upon a 50 per cent disability pursuant to which $8,262 had been paid, the immediate effect of the 1964 modified award was a reduction of weekly payments from $27 to $8.10. Since the "new" order was made retroactive to June 1, 1962, the result was

---

1. Pursuant to the Longshoremen's and Harbor Workers' Compensation Act. (herein referred to as "the Act") 44 Stat. 1424 as amended, 33 U.S.C. § 901 (1964); applicable in the District of Columbia pursuant to 45 Stat. 600, D.C.Code § 36–501 (1961).

2. Jarka Corporation v. Hughes, 299 F.2d 534, 536 (2 Cir. 1962).

3. Through an interpreter the claimant testified: "He says he has to stoop because he can't do it standing like other people; he has to crawl on the ground. That's what he said."

that an overpayment of $1,633.50 was deemed to have occurred. Thus not until February 8, 1968, when withheld amounts would absorb the overpayment, would the claimant begin to receive $8.10 per week as compensation for his permanent partial disability.

The findings in the original award, set forth pursuant to stipulation, disclosed that this claimant on March 31, 1960, was employed as a tile setter, earning $81 per week, and that while lifting a bag of cement, he suffered a trauma to his back, rupturing a disc between the fourth and fifth lumbar vertebrae. Surgery was required for the removal of the disc after which a right inguinal hernia developed. The claimant was totally disabled from April 1, 1960, to March 29, 1962. Since March 30, 1962, the original award recited, "the claimant has suffered a 50 per cent partial disability * * * which disability is continuing and is now permanent." Such was the predicate for the August 20, 1962 order.

At the modification hearing the Deputy Commissioner ruled: "That order is completely final. Let's have no evidence about anything which occurred prior to August 20, 1962." When the claimant's attorney sought to establish the type of work the claimant performed "before he got hurt and the type of work he can do and is doing now," an objection by counsel for the insurance carrier was sustained.

At the same hearing, the representative of the claimant's present employer testified that the claimant for two years had been doing "very light work, garden work, watering, cleaning up, planting flowers, bulbs, and that." He did "nothing heavy, lifting or anything like that." Practically every week the claimant had a half day off to attend an outpatient clinic. The witness had noticed no change in the claimant's condition during such employment.

The medical experts differed in their evaluation of the extent of the claimant's disability, both at the time of the original award and as a result of their subsequent observations. Dr. Masterson thought that the claimant's disability throughout was 50 per cent. Dr. Horwitz testified "I believe he can work," adding "I do not think his permanent disability exceeds for the body as a whole 15 per cent." He saw "no change of this man's condition," and his disability was the "result of his low back injury for which the award was made." He noted that the patient was wearing a brace or low back support every time the doctor saw him.

In short, there was no evidence whatever that this claimant could, in 1963 or 1964, do more or less light work than he had been doing in July and August, 1962. That he had been so engaged when the original award was entered is beyond dispute.

Further, there was no evidence whatever that in 1963 or 1964 there had been any "change in conditions" within the meaning of section 922 of the Act in comparison with "conditions," whatever they were, in August, 1962.

Finally, the 15 per cent disability "for the body as a whole," which Dr. Horwitz estimated as of October 30, 1963, was "as stated in previous reports." Dr. Masterson, for his part, had found permanent disability in August, 1961. "At that time I rated him as having a 50 per cent permanent partial disability and my note of November 13th 1963 stated that the disability rating still stood."

Because of the argument advanced by the Deputy Commissioner that his findings are presumed to be correct, we have gone into some detail beyond what is ordinarily necessary. Great deference is usually accorded to those findings, to be sure, but they certainly are not controlling unless supported by substantial evidence in the record considered as a whole.[4] Here the substantial evidence demonstrates in light of the various criteria suggested to us that there had been *no* "change in conditions"; in-

4. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951).

deed, it has expressly been found that the claimant has a permanent partial disability. Clearly the modified award may not be sustained on the record evidence respecting the "change in conditions" ground.

Accordingly, the Deputy Commissioner is now saying in effect: Had it not been stipulated in 1962 that the claimant was 50 per cent permanently disabled, and if evidence then had been taken which established to the Deputy Commissioner's satisfaction that the degree of disability was 15 per cent, not 50 per cent, the award in 1962 would have been as it now has been modified to read. That is the award which now should govern, according to the Deputy Commissioner's argument.

■■ Any such position is fallacious on two grounds. First, we must review the order before us in terms of the grounds upon which the Deputy Commissioner actually relied,[5] "change of conditions." There was no evidence of any such "change," and "mistake" was not the predicate for the contested order. Second, the fact that a wealthy employer pays this claimant $80 per week for light work as a gardener is irrelevant to establish a "change of conditions" within the meaning of section 922 of the Act. It had been stipulated that the claimant was 50 per cent disabled even though when the first award was entered, he was employed at the same work as he was at the time of the hearing, November 22, 1963. Again, section 922 accords no different status to an award evolved by agreement[6] than to one determined after hearing. "Mistake" or "change in conditions" are still the predicates for the entry of a "new compensation order"; Congress has spelled out no other grounds. Yet the Deputy Commissioner —if he intended to rely upon the "mistake in determination" ground—has failed to meet the requirements of a showing as to how he originally had made that "mistake."[7]

The judgment of the District Court is reversed so that the case may be remanded to the Deputy Commissioner with directions to reinstate the 1962 award.

Reversed with directions.

5. Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

6. See LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 81.40 (1961). We find no federal court decision to the contrary.

7. Jarka Corporation v. Hughes, *supra*, note 2.